UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LAVEAN,

    Plaintiff,

v.

    Case No. 1:04-CV-188

    Hon. Hugh W. Brenneman, Jr.

CHRISTINE RANDALL, *et al.*,

    Defendants.

                                /

**OPINION**

### I.    Introduction

Plaintiff's claims arise from certain events that occurred in the Village of Saranac in Ionia County, Michigan. Plaintiff alleges that on or about August 10, 2003, defendants placed signs on Saranac Housing Commission buildings prohibiting political activity on property owned or operated by the Housing Commission. Several months later in October 2003, plaintiff agreed to operate a caucus site as part of the presidential candidate selection process. The caucus site was located in a building owned by plaintiff and operated according to the rules and guidelines of the Democratic Party of Michigan. Plaintiff attempted to post information about the caucus site on the bulletin boards of buildings operated by defendant Saranac Housing Commission, coupled with an offer to provide transportation to the caucus site. However, the Housing Commission buildings were locked and plaintiff was denied access into the buildings.

Plaintiff further alleges that on or about February 8, 2004, the Grand Rapids Press printed an article in which defendant Christine Randall is quoted as saying "La Vean [plaintiff] is just a big nuisance trying to take advantage of old ladies, get them to sign something they don't

understand." In the same article, unnamed officials at the Housing Commission purportedly stated that plaintiff "is a nuisance who doesn't understand Federal Law." Both Randall and the Housing Commission refused delivery of a certified letter asking to retract the statement. Plaintiff alleges that he suffered damages as a result of these actions.

## II.     Procedural Background

Plaintiff has filed two separate suits. He filed an eight-count complaint in the Ionia Circuit Court against defendants Christine Randall, the Saranac Housing Commission, Dean R. Gage, Sr., and the Village of Saranac, alleging a violation of the First Amendment (Count I), tortious interference with a contract (Count II), defamation of character (Count III), libel (Count IV), breach of privacy (Count V), intentional infliction of mental anguish (Count VI), negligent infliction of mental anguish (Count VII) and a conflict of interest in violation of a state law, MCL § 15.183 (Count VIII). This suit was removed to this court and assigned case no. 5:04-cv-57 (sometimes referred to as "Case no. 57").

Plaintiff filed a similar a eight-count complaint against defendants in this court, assigned case no. 1:04-cv-188 (sometimes referred to as "Case no. 188"), alleging a violation of the First Amendment (Count I), tortious interference with a contract (Count II), defamation of character (Count III), libel (Count IV), breach of privacy (Count V), intentional infliction of mental anguish (Count VI), negligent infliction of mental anguish (Count VII) and violation of the Hatch Act, 5 U.S.C. § 1501 *et seq.* (Count VIII).

The cases were consolidated on June 25, 2004. On October 21, 2004, the parties stipulated to dismissal of plaintiff's Hatch Act claim (Count VIII) in Case no. 188. On January 5, 2005, the parties stipulated to the dismissal of plaintiff's state law conflicts of interest claim (Count

VIII) in Case no. 57. After the dismissal of the these two counts, the two suits each contained identical claims at Counts I through VII. This matter is now before the court on defendants' motion to dismiss Counts II through VII pursuant to Fed. Rules Civ. Proc. 12(b)(6) (docket no. 41) and defendants' motion for summary judgment on Counts I through VII pursuant to Fed. Rules Civ. Proc. 56 (docket no. 57).

### III.  Standard of review

Defendants have filed both a motion to dismiss pursuant to Rule 12(b)(6) and a motion for summary judgment pursuant to Rule 56. The parties have submitted extensive factual materials in addition to the matters alleged in the pleadings. Therefore, the court will treat both motions as brought pursuant to Rule 56. *See* Fed. Rules Civ. Proc. 12(b).[1] In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a Rule 56 motion as follows:

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 2552-53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *LaPointe*, 8 F.3d at 378. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury

---

[1] Rule 12(b) provides in pertinent part, "[i]f, on a motion asserting the defense number (6) to dismiss for failure of the court to state a claim upon which relief can be granted, matters outside of the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

3

could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252.

*Id.* at 478-79. "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### IV.   Discussion

The sole federal issue in this action is set forth in Count I. Plaintiff alleges that the Housing Commission violated his First Amendment rights by posting a sign on residential buildings which refused him access to talk to residents in those buildings and the opportunity to post notices in the buildings.

Plaintiff's complaint does not allege the content of the signs. At his deposition, however, plaintiff testified that the signs were posted in the summer of 2003, months before he attempted to gain access to the Housing Commission buildings. LaVean Dep. at 20-21, attached as Exh. A to defendant's Brief in support of motion for summary judgment. The sign plaintiff saw "basically said no political activity, no solicitation." *Id.* at 8. Defendant Christine Randall stated that the sign read "no political activity, no solicitation." Randall Aff. at ¶ 7 (4/11/05), attached as Exh. 1 to defendants' supplemental brief in support of motion for summary judgment. In Response 2(f) of defendants' "answers and objections to plaintiff's 'request for admission under Rule 2.312,'" defendants "admit only that the Saranac Housing Commission has a sign on a door or doors of some

4

of its buildings that reads: 'no soliciting or political activity. Saranac Housing Commission.'" *See* attachment to docket no. 97.

No genuine issue of material fact exists as to the language on the signs. Although the parties do not agree on the precise language of the signs, all parties agree that the sign contained blanket prohibitions against political activity and solicitation. *See, e.g., American Cas. Co. of Reading, Pennsylvania v. F.D.I.C.,* 39 F.3d 633, 641 (6th Cir. 1994) (minor factual differences do not raise a triable issue of fact); *Fraire v. City of Arlington*, 957 F.2d 1268, 1279 (5th Cir. 1992) (minor factual discrepancies do not constitute genuine issues of material fact for purposes of a summary judgment motion).

Plaintiff's complaint also does not give the address of the buildings that are the subject of this litigation. In his deposition, however, plaintiff identified the buildings as "the three buildings with controlled access," and said that each building had a "no political activity" sign. La Vean Dep. at 6-7. In her affidavit, defendant Randall states that the Housing Commission provides low to moderate income housing through three residential buildings in the Village of Saranac. These are at 203 Parsonage, 300 Summit Street and 320 Summit Street. Randall Aff. at ¶ 4. Defendant Randall stated that she authorized the posting of the "no political activity, no solicitation" sign on the door of each of the Housing Commission's three residential buildings. *Id.* at ¶ 7.

Plaintiff testified that he hoped to gain access to the buildings to talk to the residents to inform them about their ability to get rides to the Democratic caucus; that he was going to post a telephone number on the community bulletin board for people to call if they needed a ride; and that he "had names of people who were indeed Democrats." *Id.* He described this as a "very standard, get-out-to-vote activity." *Id.* Plaintiff stated that he sought access to one building, one

5

time, and that it was refused. *Id.* at 8. Plaintiff summarized his effort to gain access to the Housing Commission buildings in the following deposition testimony:

> Q: How many times is it that you sought access and had it refused?
>
> A: One time.
>
> Q: When you sought access, did you go to each of the three buildings and attempt to enter?
>
> A: I went to the first one. There was a person who said you can't be in here because of the fact that the sign was posted. And I went to each of the other two buildings, and saw the same sign was posted.
>
> Q: And having seen the sign, you made no effort to enter?
>
> A: No. It was on the weekend, and I made no effort. It basically said no political activity, no solicitation.
>
> Q: Those signs were posted where?
>
> A: They were posted on the front door when you enter the building and they were posted in bright flourescent [sic] colors. So they're easy to read.
>
> Q: The first building you entered then, you see the sign, you enter the building and you met some person?
>
> A: Right.
>
> Q: Who did you meet there?
>
> A: I don't recall the name, but she told me she was the building monitor or something like that.
>
> Q: The discussion you had with her, summarize it for me.
>
> A: Basically it was a discussion which I said I was here to give people information on the caucuses, and she said there is no political activity in the building, and that she was going to call the management and the police. So I said well, I'll leave.
>
> Q: That's essentially it for that day.

  A:  Right.

*Id.* at 8-9.

  Plaintiff contends that defendants' acts in posting the signs violated his First Amendment rights (freedom of speech, freedom of association and freedom of expression). Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). "[T]o state a claim under section 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right 'under color of law.'" *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988).

  "The First Amendment as applied to the states through the Fourteenth Amendment provides that the government 'shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'" *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1997). However, the government does not need to permit all forms of speech on property that it owns and controls. *International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 44 (1983).

  In *Perry*, the Supreme Court identified three different types of government property:

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. In these quintessential public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.
>
> A second category consists of public property which the state has opened for use by the public as a place for expressive activity. The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. Although a state is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest.
>
> Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the First Amendment does not guarantee access to property simply because it is owned or controlled by the government. In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. As we have stated on several occasions, the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.

*Perry*, 460 U.S. at 45-46 (citations, quotation marks and footnotes omitted).

These Housing Commission buildings fall under the third designation, i.e., "[p]ublic property which is not by tradition or designation a forum for public communication." *Id.* at 46. A government-owned, public housing authority complex which is dedicated for residential use by eligible low income families is a "non-public forum" for purposes of the First Amendment. *See De*

8

*La O v. Housing Authority of the City of El Paso, Texas*, 417 F.3d 495, 503 (5th Cir. 2005) (public housing facilities have been repeatedly held to constitute non-public fora); *Daniel v. City of Tampa*, 38 F.3d 546, 550 (11th Cir. 1994); *Crowder v. Housing Authority*, 990 F.2d 586, 591 (11th Cir. 1993) (library of housing project is non-public forum); *Daily v. New York Housing Authority*, 221 F. Supp.2d 390, 399 (S.D.N.Y. 2002) (community center at housing project was non-public forum at times by default and a limited public forum 'at other times).

In a non-public forum, such as the Housing Commission buildings, the state may restrict speech only in such a manner as is reasonable and viewpoint-neutral. *Perry,* 460 U.S. at 46; *De La O*, 417 F.3d at 504. Regulations concerning a non-public forum "need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266 (6th Cir. 2005), *quoting Lee*, 505 U.S. at 679. The signs in this instance were viewpoint-neutral because they "[did] not draw distinctions based on the topic of speech at issue or the point of view of the speaker." *Jobe*, 409 F.3d at 268. The signs made no attempt to distinguish between any types of political activities or any types of solicitation. It is also worth remembering that as far as this plaintiff was concerned, the signs were posted well prior to his attempt to disseminate his political information, and his political information pertained to the presidential election, not the housing commission.

Because the signs were viewpoint-neutral, they survive scrutiny as long as they were "reasonable in light of the purpose served by the forum." *De La O*, 417 F.3d at 504, *quoting Good News Club v. Milford Central School*, 533 U.S. 98, 107 (2001). The restriction needs only to be reasonable, it need not be the most reasonable or the only reasonable limitation. *Lee*, 505 U.S. at 679. Here, the buildings consisted of residential dwellings which the Housing Commission had

created to address "the shortage of safe and sanitary dwelling accommodations in the Village of Saranac, available to persons who lack the amount of income which is necessary to enable them, without financial assistance, to live in decent, safe and sanitary dwellings without overcrowding." Village of Saranac Ordinance No. 34, attached as Exh. D to defendants' brief in support of summary judgment. In performing its duties, the Housing Commission "provides low-to-moderate-income housing to the public in the Village of Saranac." Randall Aff. at ¶ 2.

Defendant Randall has stated in her affidavit, and plaintiff has not disputed, that the signs were placed at the direction of the United States Department of Housing and Urban Development to prohibit partisan politics in the common areas of the Housing Commission's three residential buildings. Randall Aff. at ¶ 7. The Housing Commission also adopted a "one strike and you are out" policy in 1996 and a "trespass and barring" policy in 2002 to address criminal activity in the buildings. *Id.* at ¶¶ 8-9.[2] The signs, trespass policy, and "one strike" policy were tools adopted by the Housing Commission to help keep residents, including elderly residents, from falling victims to crime. *Id.* at ¶ 10. The three Housing Commission buildings also had secured entry systems for the privacy and protection of the tenants. *Id* at ¶¶ 5-6.

Given that the nonpublic forum at issue consisted of controlled access or "secured entry" residential buildings, the primary purpose of which was to provide homes for individual citizens, the court finds that a ban on political activity and solicitation is reasonable. These buildings

---

[2] Defendants have not provided the court with a written copy of either the 1996 or the 2002 policy. However, plaintiff does not dispute the existence of either policy.

10

are "lawfully dedicated" to provide safe and decent dwellings for individuals with limited financial resources. The buildings are not open to the general public.

The Supreme Court has acknowledged that citizens have a special interest in residential privacy:

> One important aspect of residential privacy is protection of the unwilling listener. Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different. That we are often captives outside the sanctuary of the home and subject to objectionable speech . . . does not mean we must be captives everywhere. Instead, a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom.

*Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988) (citations and quotation marks omitted). *See, also, e.g. Kovacs v Cooper,* 336 U.S. 77, 86 (1949) (home owner may protect himself from intrusion by an appropriate sign that he is unwilling to be disturbed).

In more prosaic terms, an unwanted outsider simply has no constitutional right of access to someone else's front door. Whether a front door is in a gated community in suburbia; inside an apartment house with a doorman in New York City or in countless other apartment houses that use a secured common entrance; to a condominium in an exclusive Chicago high-rise; or on an Iowa farmhouse down a long driveway with a no-trespassing sign, we favor on a daily basis in thousands of communities across the United States the right of an unwilling listener to deny to the public the opportunity to post notices on his front door, or gain access to the common areas of the building in which he has his apartment. (Indeed, in some situations, such as a common entry building, for example, residents may have relinquished authority to allow the posting of notices even if they have no objection to them. The authority may lie with the owner of the facility or some

membership board.)  Such rights of privacy are diametrically inconsistent with any purported First Amendment right of an outsider to post a notice or even knock.  Of course, many front doors on houses are physically accessible from the street, but the physical ability to reach the door is not to be equated with a constitutional right to do so.

Residents of the Housing Commission buildings are entitled to enjoy privacy "within their own walls," *Frisby,* 487 U.S. at 484, and avoid unwanted intrusions no less than other citizens. *See, Perry,* 460 U.S. at 46.  The Housing Commission's ban on political activity and solicitation is reasonable to protect the resident's right to be free from unwanted speech.  By banning political activity and solicitation in the buildings, the Housing Commission is protecting the individual residents' ability to maintain privacy and the "sanctuary" of their own homes.

The court need not find the signs to have been the *most* reasonable limitation on the use of the buildings, as long as they were a reasonable limitation, *see Lee*, 505 U.S. at 679, both in terms of  protecting the residents from crime and in allowing them to maintain the privacy of their homes.  A ban on political activity or solicitation in a nonpublic forum is not *per se* unreasonable, and courts have upheld the government's authority to place a total ban on certain activity at a non-public forum.  *See, e.g., United States v. Kokinda*, 497 U.S. 720, 735 (1990) (plurality opinion) (upholding Postal Service regulation that banned solicitation anywhere on postal property, including post office buildings and non-public sidewalks surrounding the buildings); *New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 23-25, 31 (1st Cir. 2002) (upholding total ban on leafletting in front of a nonpublic forum (conference center)); *General Media Communications, Inc. v. Cohen*, 131 F.3d 273, 284-85 (2nd Cir. 1997) (upholding constitutionality of congressional act prohibiting sale of sexually explicit material at military exchanges).

The availability of alternative channels of communication is a factor bearing upon the reasonableness of a government's restriction. *See Daniel*, 38 F.3d at 550. This factor weighs in favor of the government's restriction in this instance. Plaintiff's testified that his attempt to disseminate his message consisted of a single unsuccessful attempt to enter a residential building. While the signs posted on the front door prohibited plaintiff's access from entering into the building, nothing in the record suggests that plaintiff was prohibited from distributing the material to the residents by alternative means, such as handing out notices on public sidewalks or posting notices in public areas near the buildings. In fact, plaintiff testified that he had names of individual residents identified as Democrats. LaVean Dep. at 7. As one alternative means of communication, rather than entering the building to talk with the residents, plaintiff could have called these individuals on the telephone and advised them of the date and location of the Democratic caucus. Of course, there were also the mails, the internet and local broadcasting. "The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message. Rarely will a nonpublic forum provide the only means of contact with a particular audience." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 809 (1985) (citations omitted).

Accordingly, defendants are entitled to summary judgment on Count I.

### III.     Plaintiff's state law claims

The remainder of plaintiff's complaint consists of various state law claims against defendants (tortious interference with a contract, defamation of character, libel, breach of privacy, intentional infliction of mental anguish and negligent infliction of mental anguish). Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental

jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). The court initially exercised its supplemental jurisdiction over plaintiff's state law claims, but the dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of its supplemental jurisdiction.

Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, it may determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Since plaintiff's remaining claims here allege a variety of torts under state law, it is appropriate for the Michigan courts to address these claims, and there is no compelling reason for this court to do so. Accordingly, the court declines to retain supplemental jurisdiction over plaintiff's state law claims.

### V. Conclusion

For the reasons set forth above,

Defendants' motion for summary judgment (docket no. 57) will be **GRANTED** as to Count I in both consolidated actions and **DENIED** as moot as to all other counts.

Defendants' motion to dismiss (docket no. 41) will be **DENIED** as moot.

The remaining claims in case of *Lavean v. Randall et al.*, No. 5:04-cv-57, having no

basis for federal jurisdiction, will be remanded to the Ionia Circuit Court for further proceedings on the state law claims. *See, e.g., K.B.A. Const., LLC v. Home Acres Bldg. Supply Co.*, No. 1:05-cv-264, 2005 WL 2243098 at *5 (W.D. Mich. Sept. 14, 2005) (remanding a removed action to state court, rather than dismissing the action under § 1367(c)(3), avoids the delay and expense of re-filing the claim in state court).

The remaining claims in case of *Lavean v. Randall et al.*, No. 1:04-cv-188, having no basis for federal jurisdiction, and being duplicative of those remaining in *Lavean v Randall, et al,* No. 5:04-CV-57, will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An order consistent with this opinion shall be issued forthwith.


Dated:  September 29, 2005         /s/ Hugh W. Brenneman, Jr.
                                   Hugh W. Brenneman, Jr.
                                   United States Magistrate Judge